**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                          **CRIMINAL ACTION**

**VERSUS**                                                            **No. 10-222**

**ALVIN MINGO**                                                      **SECTION I**

## ORDER AND REASONS

Before the Court is a motion[1] filed by defendant, Alvin Mingo, to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The government filed an opposition,[2] to which defendant filed a reply.[3] For the following reasons, the Court finds that an evidentiary hearing is not required, the motion is **DENIED**, and defendant's post-conviction application is **DISMISSED WITH PREJUDICE**.

## BACKGROUND

On February 4, 2011, defendant was charged in counts 1, 12, 16, 17, 18, 19, 21, 25, 26, and 27 of a 28-count superseding indictment.[4] Count 1 charged that on or about March 2009 and continuing until on or about July 30, 2010, defendant knowingly and intentionally combined, conspired, confederated, and agreed with his co-defendants and others "to possess with the intent to distribute fifty (50) grams or more of cocaine base ('crack') and five hundred (500) grams or more of cocaine hydrochloride" in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and (b)(1)(B); all in violation of 21 U.S.C. § 846.[5]

---

[1] R. Doc. No. 675.
[2] R. Doc. No. 679.
[3] R. Doc. No. 681.
[4] R. Doc. No. 233. Defendant was originally charged on August 12, 2010, in a 28-count indictment. R. Doc. No. 1.
[5] R. Doc. No. 233, at 1-2.

Count 12 charged that on or about January 5, 2010, defendant knowingly and intentionally used a communications facility—specifically, a telephone—in committing, causing, and facilitating the commission of the crime of "conspiracy to possess with the intent to distribute cocaine base ('crack') and cocaine hydrochloride," all in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2.[6] Counts 16, 17, 18, 19, and 21 are substantially identical to count 12 except that they relate to § 843(b) violations that occurred on other dates.[7]

Counts 25, 26, and 27 all relate to a traffic stop and a subsequent search of defendant's vehicle and home that occurred on April 23, 2010.[8] Count 25 charged that defendant knowingly and intentionally possessed with the intent to distribute a quantity of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).[9] Count 26 charged that defendant knowingly possessed a firearm in furtherance of a drug trafficking crime, that is, "possessing with the intent to distribute a quantity of cocaine hydrochloride," in violation of 18 U.S.C. § 924(c)(1)(A).[10] Count 27 charged that defendant knowingly possessed a firearm in and affecting interstate commerce after having previously been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[11] The previous felony conviction, as established by a bill of

---

[6] R. Doc. No. 233, at 5. Counts 12, 16, 17, 18, 19, and 21 do not mention any specific quantities, and such counts do not specifically reference count 1, but merely refer to the crime of "conspiracy to possess with the intent to distribute cocaine base ('crack') and cocaine hydrochloride." *E.g.*, R. Doc. No. 233, at 5; *see also* R. Doc. No. 609, at 15-16. The Court notes, however, that the factual basis signed by defendant makes clear that such offenses were in furtherance of the overarching drug conspiracy charged in count 1, which was described in the factual basis as "a confederation of drug dealers, who assisted one another and worked together as necessary to conduct their individual businesses." R. Doc. No. 318, at 2.

[7] R. Doc. No. 233, at 6-8.

[8] *See* R. Doc. No. 318, at 10-12.

[9] R. Doc. No. 233, at 10.

[10] R. Doc. No. 233, at 10.

[11] R. Doc. No. 233, at 10-11.

information filed pursuant to 21 U.S.C. § 851(a),[12] was for possession with the intent to distribute five or more grams of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).[13]

On March 17, 2011, the Court accepted defendant's guilty pleas as to the above-described ten counts.[14] On August 23, 2012, defendant appeared before the Court for his sentencing hearing.[15] Mere minutes before the hearing began, the government received information causing them to "believe that [defendant] had in his possession a shank" while incarcerated in Tangipahoa Parish.[16] The Court described this development as "very significant"[17] and, without objection, continued the sentencing hearing for two weeks.[18]

---

[12] R. Doc. No. 294. At the rearraignment hearing, defendant admitted that "the facts contained in the bill of information which establish[ed] [his] prior conviction [were] correct." R. Doc. No. 609, at 51-52.

[13] *See* R. Doc. No. 233, at 10-11; R. Doc. No. 294, at 1. The superseding indictment originally stated that defendant pled guilty to "possession with intent to distribute five (5) grams but less than fifty (50) grams of cocaine base ('crack')." R. Doc. No. 233, at 11. The § 851(a) bill of information originally stated that defendant pled guilty to "possession with the intent to distribute more than five (5) grams, but less than fifty (50) grams of cocaine base ('crack')." R. Doc. No. 294, at 1.

At the rearraignment hearing, however, the Assistant U.S. Attorney made oral motions to amend both documents to omit the portion that reads "but less than fifty (50) grams," which was a typographical error, and instead to read "'to distribute five or more grams of cocaine base ('crack').'" R. Doc. No. 609, at 7 (amending the superseding indictment); *see also* R. Doc. No. 609, at 21 (amending the § 851(a) bill of information to read "to distribute five grams or more of cocaine base (crack)"). Defendant advised the Court that he understood the government's motions, that he had discussed these amendments with his attorney, and that he had no objection to such motions. R Doc. No. 609, at 8, 21-22. Accordingly, the Court granted the motions to amend the superseding indictment and § 851(a) bill of information. *See* R. Doc. No. 609, at 8, 22; *see also United States v. Mingo*, Criminal Action No. 03-293 (judgment entered on Apr. 14, 2004).

[14] R. Doc. No. 609, at 50.

[15] R. Doc. No. 607.

[16] R. Doc. No. 607, at 3.

[17] R. Doc. No. 607, at 3.

[18] R. Doc. No. 607, at 4.

On September 6, 2012, the Court held a sentencing hearing.[19] The government presented the testimony of Axil Deur ("Deur"), a deputy at the Tangipahoa Parish Sheriff's office, who conducted the search of defendant's cell during a "shakedown" at the Tangipahoa Parish jail.[20] Deur testified that he and his fellow deputies discovered a shank in defendant's cell that was hidden "inside of a toilet paper roll underneath the cell table."[21] Deur further testified that defendant admitted that the shank was his and that "he told [Deur] that he used it to cut meat that he bought off the commissary."[22] According to Deur, the meat at issue (sausage) that was sold at the commissary could be broken apart by hand, and he testified that he had never seen an inmate require a knife to separate or cut the sausages.[23] Defendant's counsel did not cross examine Deur "[b]ecause, as we said, he admitted to having it and the reason why."[24]

Defendant also testified regarding the shank and reiterated that he possessed the shank for the purpose of cutting meat.[25] Defendant admitted: "I knew it was wrong. It was contraband."[26] The Court stated: "You knew it was wrong to have that shank. The shank presents a problem and

---

[19] R. Doc. No. 610. The Court notes that the presentence report ("PSR") understated the amount of crack cocaine for which defendant was held responsible due to a calculation error. *See* R. Doc. No. 610, at 10. Defendant initially objected to the 56-gram amount that was listed in the PSR, but after a lengthy discussion on the record and an off-the-record discussion with counsel, defendant withdrew his objection. *See* R. Doc. No. 610, at 5-12. Accordingly, notwithstanding this calculation error, the Court adopted the PSR as uncontested. R. Doc. No. 610, at 12.

[20] R. Doc. No. 610, at 12-14. The government also presented the testimony of FBI Special Agent Beau Barker in support of its motion for an upward variance. *See* R. Doc. No. 610, at 22-23. The Court interpreted the "motion for upward variance [to be] based on [a] lack of cooperation and [defendant's] criminal history." R. Doc. No. 610, at 40. The Court "rejected the government's reasons for an upward variance." R. Doc. No. 610, at 40.

[21] R. Doc. No. 610, at 16.

[22] R. Doc. No. 610, at 18.

[23] R. Doc. No. 610, at 18-19. Although no evidence was presented as to whether defendant actually requested the meat, the Court stated that "[f]or the purposes of this hearing, I'll assume that he asked for sausage." R. Doc. No. 610, at 21.

[24] R. Doc. No. 610, at 21.

[25] *See, e.g.*, R. Doc. No. 610, at 33-34.

[26] R. Doc. No. 610, at 34.

a danger, not only to other inmates and yourself, but to the guards, end of story."[27] After hearing

both Deur's and defendant's testimony, the Court stated that it did not "believe for a second" that

the shank was used to cut sausage.[28]

The Court found that there were reasons for an upward variance and discussed them at

length with defendant.[29] The Court fashioned defendant's sentence based on, among other issues,

defendant's possession of the shank while awaiting sentencing,[30] defendant's history of rule

violations while incarcerated,[31] and the fact that defendant was on supervised release (as part of

his sentence for the crime described in the § 851(a) bill of information) when he committed the

crimes charged in the superseding indictment.[32] The Court sentenced defendant to a total term of

imprisonment of 216 months,[33] as well as eight years of supervised release.[34] The Court further

ordered such sentence to be served consecutively to the sentence that was imposed due to the

supervised release violation.[35]

Defendant appealed his sentence, and the sole issue presented was "[w]hether the 18-year

prison sentence was substantively unreasonable."[36] Applying an abuse-of-discretion standard,[37]

---

[27] R. Doc. No. 610, at 35.

[28] R. Doc. No. 610, at 47; *accord* R. Doc. No. 610, at 22 ("But not for one second do I believe that he needed to cut sausage at the jail.").

[29] R. Doc. No. 610, at 40-48.

[30] R. Doc. No. 610, at 47-48.

[31] R. Doc. No. 610, at 47.

[32] R. Doc. No. 610, at 47.

[33] R. Doc. No. 610, at 49. This term of imprisonment "consists of 156 months as to each of [c]ounts 1, 25, [and] 27, and 96 months as to each of [c]ounts 12, 16, 17, 18, 19[,] and 21, all to be served concurrently, and 60 months as to [c]ount 26, to be served consecutive" to the other terms. R. Doc. No. 610, at 49.

[34] R. Doc. No. 610, at 49 ("This term of supervised release consists of eight years as to [c]ount 1, six years as to [c]ount 25[,] and three years as to each of the counts 12, 16, 17, 18, 19, 21, 26, [and] 27, all to be served concurrently.").

[35] R. Doc. No. 610, at 49.

[36] Brief for Appellant at 2, *United States v. Mingo*, 542 F. App'x 432 (5th Cir. Apr. 29, 2013); *see also* R. Doc. No. 672, at 2; *Mingo*, 542 F. App'x at 433.

the Fifth Circuit found "that the district court appropriately relied upon the § 3553(a) sentencing factors in determining that an above-guidelines sentence was warranted,"[38] that this Court provided "extensive reasons . . . to support its sentencing decision [and gave] careful attention . . . to [defendant]'s particular facts and circumstances,"[39] and that "the magnitude of the variance is not unreasonable."[40] Accordingly, the Fifth Circuit affirmed defendant's sentence on November 15, 2013.[41]

Defendant filed the instant § 2255 motion on May 30, 2014.[42] Defendant also attached two affidavits in support of his motion and a previous version of the factual basis that was signed two days before the rearraignment but not entered into the record.[43] The government does not challenge the timeliness of the motion.

## STANDARD OF LAW

### I.        28 U.S.C. § 2255

Section 2255(a) provides a prisoner in custody with four grounds upon which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Hill v. United States*, 368 U.S. 424, 426-27 (1962). Section 2255 is designed to remedy constitutional errors and other injuries that could not be brought on direct appeal and would result in injustice if left unaddressed. *See*

---

[37] R. Doc. No. 672, at 3; *Mingo*, 542 F. App'x at 433.
[38] R. Doc. No. 672, at 3; *Mingo*, 542 F. App'x at 433.
[39] R. Doc. No. 672, at 4; *Mingo*, 542 F. App'x at 433.
[40] R. Doc. No. 672, at 4; *Mingo*, 542 F. App'x at 434.
[41] R. Doc. No. 672; *Mingo*, 542 F. App'x 432.
[42] R. Doc. No. 675.
[43] R. Doc. No. 675, at 34-44.

*United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "[A] proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction . . . ." *United States v. Hayman*, 342 U.S. 205, 222-23 (1952). The inquiry does not extend to the misapplication of sentencing guidelines. *See Williamson*, 183 F.3d at 462.

"The § 2255 remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy." *United States v. Garcia*, 956 F.2d 41, 45 (4th Cir. 1992) (citing *Andrews v. United States*, 373 U.S. 334, 339 (1963)). Pursuant to § 2255, the Court must grant defendant a hearing to determine the issues and make findings of fact and conclusions of law unless "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992).

"The Supreme Court has emphasized repeatedly that a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (quotation omitted). "[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice" or actual innocence. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 622 (1998). The Supreme Court has held that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought" in a § 2255 proceeding. *Massaro*, 538 U.S. at 509; *see also, e.g.*, *United States v. Johnson*, 124 F. App'x 914, 915 (5th Cir. 2005).

## II.   Ineffective Assistance of Counsel

The United States Supreme Court set forth the standard for judging the performance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court articulated a two-part test that requires the petitioner to prove (1) deficient performance and (2) resulting prejudice. *Id.* at 697.

7

Deficient performance is established by "show[ing] that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In applying this standard, a "court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (quoting *Strickland*, 466 U.S. at 689).

The second prong of the *Strickland* test looks to the prejudice caused by counsel's allegedly deficient performance. This requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the context of alleged trial errors, the petitioner must show that his "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

The petitioner must satisfy both prongs of the Strickland test in order to be successful on an ineffective assistance claim. *See id.* at 697. A court is not required to address these prongs in any particular order. *Id.* If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, "that course should be followed." *Id.*

"The entitlement to effective assistance does not end when the sentence is imposed, but extends to one's first appeal of right." *Williamson*, 183 F.3d at 462. Appellate counsel's performance is evaluated under the same *Strickland* standard as is trial counsel's performance. *Id.* "To prevail, [the defendant] must establish, first, that his attorney's representation was deficient and, second, that the deficient performance caused him prejudice." *Id.*

With respect to the deficient performance prong in the appellate context, the Fifth Circuit has stated that "[c]ounsel does not need to 'raise every nonfrivolous ground of appeal available.'

Nonetheless, a reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Id.* (quoting *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998)).

With respect to the prejudice prong, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional error[], the result of the proceeding would have been different." *Id.* at 463 (quoting *Jones v. Jones*, 163 F.3d 285, 302 (5th Cir. 1998)) (alteration in original) (internal quotation marks omitted). "A reasonable probability is that which renders the proceeding unfair or unreliable, i.e., undermines confidence in its outcome." *Id.*

"An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *see also Medellin v. Dretke*, 371 F.3d 270, 279 (5th Cir. 2004) ("Because the claim . . . is without merit, the claim of ineffective assistance of counsel for not raising the issue on appeal is, likewise, without merit."); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").

## DISCUSSION

Defendant organized his various arguments into seven asserted grounds for relief which the Court addresses in turn.

### I. Count 26: 18 U.S.C. § 924(c)(1)(A)

Defendant asserts that his conviction with respect to count 26 should be overturned because the facts "lack[] the elements to convict pursuant to [*Bailey v. United States*, 516 U.S.

137 (1995)]."[44] Defendant also asserts that his trial counsel[45] was ineffective "for allowing defendant to accept a guilty plea for a non-existent offense" and that his appellate counsel[46] was ineffective for not raising this argument on direct appeal.[47]

In *Bailey*, the Supreme Court interpreted a prior version of § 924(c)(1)(A) that "require[d] the imposition of specified penalties if the defendant, 'during and in relation to any crime of violence or drug trafficking crime . . . , uses or carries a firearm.'" 516 U.S. at 142-43. The Court held that "'use' must connote more than mere possession of a firearm by a person who commits a drug offense," noting that "[h]ad Congress intended possession alone to trigger liability under § 924(c)(1), it easily could have so provided." *Id.* at 143.

In 1998, "Congress made the change [described in *Bailey*] and added the word 'possesses' to the principal paragraph" of § 924(c) with an amendment that "was colloquially known as the 'Bailey Fix Act.'" *United States v. O'Brien*, 560 U.S. 218, 233 (2010). As this Court explained to defendant at his rearraignment hearing, conviction pursuant to the current, amended version of § 924(c)(1)(A) requires that the government prove beyond a reasonable doubt that defendant "knowingly *possessed* a firearm in furtherance of the commission of the crime charged in [c]ount 25 of the superseding indictment."[48] *See* 18 U.S.C. § 924(c)(1)(A) ("[A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . . ."). Defendant did not plead to a non-existent offense.

---

[44] R. Doc. No. 675, at 15; *see also* R. Doc. No. 681, at 1-2.
[45] At rearraignment and sentencing, defendant was represented by Robert C. Jenkins. *See* R. Doc. No. 609, at 1. The Court refers to Mr. Jenkins as "trial counsel," even though no trial was conducted.
[46] On appeal, defendant was represented by Jordan Mark Siverd, Assistant Federal Public Defender. *See* Brief for Appellant at i, *Mingo*, 542 F. App'x 432.
[47] R. Doc. No. 675, at 15.
[48] R. Doc. No. 609, at 18 (emphasis added).

Defendant also "asserts that the firearm was between the seat and the drugs were under the sea[t] on the floorboard. This is only a possession and the[re] is no relation to or in[ ]furtherance of a drug trafficking offense. Defendant asserts that he was not on his way to distribute the drugs and no evidence can rebut this assertion."[49] The Court construes this argument as a challenge to the sufficiency of the factual basis regarding the requirement that the possession of the firearm be "in furtherance" of a drug trafficking crime.

Defendant cites a number of cases in support of his position, but the majority of them were decided prior to the 1998 amendment to § 924(c) and have no applicability here.[50] Considering more recent jurisprudence, although "'mere presence' of a firearm at the scene of drug activity does not alone amount to possession in furtherance of that activity," the Fifth Circuit has determined that the keeping of readily accessible, loaded, illegal weapons in close proximity to substantial quantities of drugs is sufficient for a conviction pursuant to § 924(c). *United States v. Charles*, 469 F.3d 402, 406 (5th Cir. 2006) (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 414 (5th Cir. 2000)[51]); *see also United States v. Contreras*, 558 F. App'x

---

[49] R. Doc. No. 675, at 18.

[50] *See* R. Doc. No. 675, at 15-18.

[51] In *Ceballos-Torres*, the Fifth Circuit listed factors that may be considered when determining whether a particular defendant's possession of a firearm furthers, advances, or helps forward a drug trafficking offense: (1) "the type of drug activity that is being conducted"; (2) "the accessibility of the firearm"; (3) "the type of the weapon"; (4) "whether the weapon is stolen"; (5) "the status of the possession (legitimate or illegal)"; (6) "whether the gun is loaded"; (7) "proximity to drugs or drug profits"; and (8) "the time and circumstances under which the gun is found." 218 F.3d at 414-15.
  A consideration of these factors also disproves defendant's assertion that his possession was not in furtherance of a drug trafficking crime. First, defendant admitted in the factual basis that officers found "a distributable amount of narcotics (not for personal use)" inside the vehicle that he was driving. R. Doc. No. 318, at 11. Second, the firearm was located between the driver's seat and the center console. R. Doc. No. 318, at 11. Third, the weapon was a "Glock, Model 21, .45 caliber," R. Doc. No. 318, at 11, not an "unloaded antique[]" or a gun used "in target shooting or in hunting game," *United States v. Riggins*, 524 F. App'x 123, 130 (5th Cir. 2013). Fourth, there is nothing in the record to suggest that the weapon was stolen. Fifth, defendant's

400, 402 (5th Cir. 2014) (affirming the district court's denial of a motion for acquittal where "[t]he firearm was located in the vehicle's glove compartment next to the door where the drugs were concealed" and was "clearly available to provide protection to [the defendant] in the event someone attempted to steal the drugs or the large amount of currency to be received upon sale of the drugs"); *United States v. Whitley*, 459 F. App'x 472, 473-74 (5th Cir. 2012) (finding sufficient evidence to uphold a jury's § 924(c)(1)(A) conviction where "[t]he firearm and 2.49 pounds of marijuana were found in a closed ice chest which was on the rear floorboard, directly behind [the defendant]"); *United States v. Rose*, 587 F.3d 695, 702-03 (5th Cir. 2009) (finding sufficient evidence for a guilty verdict where the defendant had drugs in his lap and a handgun concealed under his seat). Defendant's possession of a distributable quantity of narcotics and a firearm within arm's reach while driving his vehicle is sufficient to sustain his § 924(c)(1)(A) conviction.

Finally, the Court notes that defendant has not presented any new evidence regarding this conviction that was not previously known to the Court. Considering defendant's admissions at his rearraignment and the signed factual basis that fully supports a conviction pursuant to § 924(c)(1)(A), his argument that the firearm had "no relation" to a drug trafficking offense is

---

possession of the weapon was illegal because he was a convicted felon. *See* R. Doc. No. 294. Sixth, "[t]he weapon contained one round in the chamber and one magazine with eleven rounds." R. Doc. No. 318, at 11. Seventh, both the drugs and the gun were found in the passenger compartment near the driver's seat, within arm's reach of defendant. *See* R. Doc. No. 318, at 11. Eighth, defendant was speeding and had "illegal window tint" when he was pulled over. R. Doc. No. 318, at 10.

Only the fourth factor weighs against a finding that defendant's possession of the firearm was not in furtherance of the drug trafficking activity. The remaining seven factors all suggest to varying degrees that the possession of the gun was to provide protection during the transportation of a distributable amount of cocaine hydrochloride. *See Contreras*, 558 F. App'x at 402; *Ceballos-Torres*, 218 F.3d at 415.

meritless.[52] Because such argument is meritless, neither his trial counsel nor his appellate counsel were ineffective for failing to raise it. *See Kimler*, 167 F.3d at 893; *see also Medellin*, 371 F.3d at 279; *Smith v. Puckett*, 907 F.2d at 585 n.6.

## II.      Count 1: Conspiracy

Defendant asserts that it was "Plain Error by the District Court to sentence defendant to a conspiracy that lacked the elements to convict because [there] was nothing more than a buyer/seller relationship."[53] Defendant also asserts that his trial counsel was ineffective "for advising defendant to plead to a non-existent offense of conspiracy" and for failing to raise the issue at sentencing, and that his appellate counsel was ineffective for not raising this argument on direct appeal.[54]

As the Court explained to defendant at his rearraignment,[55] "[a] conspiracy is an agreement between two or more persons to join together to accomplish an unlawful purpose. It is a kind of partnership in crime in which each member becomes the agent of every other member."[56] The Court explained that "[y]ou may become a member of a conspiracy without knowing all of the details of the unlawful scheme or the identities of all of the other alleged

---

[52] R. Doc. No. 675, at 18.

[53] R. Doc. No. 675, at 19; *see also* R. Doc. No. 675, at 44 ("I was no more than a broker for the [sale] of drugs to these individuals and we shared no profits, venue, control, nor ownership throughout these events, these are the reasons that I did not plead to a guilty plea.").

[54] R. Doc. No. 675, at 19.

[55] The Court began to explain the elements of the offenses contained in the superseding indictment but stopped partway through for a brief recess to correct a mistake in the rearraignment script. R. Doc. No. 609, at 11 ("THE COURT: Sometimes when you rush to get things done like accommodate a re-arraignment this close to trial mistakes are made, so there was a mistake made in the script, but we corrected that now."). Defendant indicated that he understood that there was a problem. R. Doc. No. 609, at 11 ("THE COURT: . . . But I am going to begin by defining these crimes again so there is no misunderstanding as to each of the elements of each of the offenses for which you're charged, Mr. Mingo. Do you understand that? THE DEFENDANT: Yes, sir."). Defendant also indicated that he understood the charges against him and the elements of the offenses. R. Doc. No. 609, at 19.

[56] R. Doc. No. 609, at 12.

conspirators. If you understood the unlawful nature of a plan or scheme and knowingly and intentionally joined in that plan or scheme on one occasion, that's sufficient to convict you for conspiracy . . . ."[57] The Court also explained that "[t]he government need not prove that you entered into any formal agreement, nor that you directly communicated all of the details of the scheme to your co-conspirators. Similarly, the government need not prove that all of the details of the scheme alleged in the indictment were actually agreed upon or carried out."[58] Finally, the Court stated that "for you to be guilty of this crime, . . . the government can prove that you and one or more persons reached an agreement to possess with intent to distribute *either* cocaine base *or* cocaine hydrochloride."[59] *See also* Fifth Circuit Pattern Jury Instructions (Criminal) § 2.89 (2012).

The evidence against defendant was obtained primarily from the use of wiretaps.[60] The factual basis states in pertinent part:

> The evidence collected via these wiretaps, which covered approximately seven months of time, and which was augmented by, among other things, three search warrants of three of the defendants' residences, established that this group of individuals functioned as a confederation of drug dealers, who assisted one another and worked together as necessary to conduct their individual businesses. For example, not only would the defendants buy and sell distributable quantities of narcotics from one another, the defendants would at times help one another in the tasks associated with dealing drugs, e.g., the actual delivery of narcotics to buyers.[61]

The factual basis then details a number of "telephone calls [that] are representative examples of this activity."[62]

---

[57] R. Doc. No. 609, at 12.
[58] R. Doc. No. 609, at 12-13.
[59] R. Doc. No. 609, at 13 (emphasis added).
[60] *See also* discussion *infra* Part IV.
[61] R. Doc. No. 318, at 2.
[62] R. Doc. No. 318, at 2.

The factual basis amply supports a conspiracy conviction. Defendant argues that his relationship with his co-conspirators was merely that of "buyer/seller,"[63] but the Court need not address each of his specific arguments in detail because of defendant's admission in the factual basis that he was part of "a confederation of drug dealers" who would not only "buy and sell distributable quantities of narcotics from one another, [but also] would at times *help one another in the tasks associated with dealing drugs, e.g., the actual delivery of narcotics to buyers*."[64] Defendant's arguments do not rebut his explicit admission that his relationship with his co-defendants went beyond that of buyer and seller.

Defendant's assertions that "[n]o conspiracy has been shown" and "nothing in the record concludes that [there] was an agreement with Lance Foucha or any other person to do more than sell and purchase cocaine" are meritless.[65] Because such argument is meritless, neither his trial counsel nor his appellate counsel were ineffective for failing to raise it. *See Kimler*, 167 F.3d at 893; *see also Medellin*, 371 F.3d at 279; *Smith v. Puckett*, 907 F.2d at 585 n.6.

### III. Erroneous Drug Quantity

Defendant's third asserted ground for relief is that there was an "Erroneous Drug Quantity finding in light of [*United States v. Alleyne*, 133 S. Ct. 2151 (2013),] that raised defendant's statutory minimum which violated the 5th and 6th amendment of Due process and both counsel and appellate counsel are ineffective for not arguing this notion on sentencing and on Direct Appeal."[66] Defendant also directly challenges the finding that he was responsible for at

---

[63] R. Doc. No. 675, at 19-21.
[64] R. Doc. No. 318, at 2 (emphasis added).
[65] R. Doc. No. 675, at 20-21.
[66] R. Doc. No. 675, at 22.

least 50 grams of crack.[67] Echoing some of his arguments from ground two,[68] defendant asserts that he "did not stipulate to this erroneous drug quantity of crack in his factual basis therefore the factual basis was inaccurate because nothing in the record shows that defendant instructed anyone to cook crack, transform powder cocaine to crack, or showed them how to transform the cocaine into crack."[69]

Defendant is correct that *Alleyne* is applicable because it was decided on June 17, 2013, while his case was pending on direct appeal. *See, e.g.*, *United States v. Delgado-Marrero*, 744 F.3d 167, 185 (1st Cir. 2014) ("The Alleyne rule applies to cases pending on direct appeal at the time it was decided.") (internal quotation marks omitted); *Speight v. United States*, No. 13-8019, 2014 WL 3543699, at * (N.D. Ala. July 14, 2014) ("[T]he *Alleyne* rule clearly applies to cases pending on direct appeal at the time it was decided . . . ."); *see also Griffith v. Kentucky*, 479 U.S. 314, 322-23 (1987). However, "*Alleyne's* rule that 'facts that increase mandatory minimum sentences must be submitted to the jury' cannot help a defendant who admitted to those facts." *United States v. Davis*, No. 07-357, 2013 WL 5674134, at *5 (E.D. La. Oct. 16, 2013) (Africk, J.) (quoting *Alleyne*, 133 S. Ct. at 2163). Accordingly, any argument based on *Alleyne* is without merit.

The Court notes that defendant objected at his sentencing hearing to the quantity of crack that was calculated by U.S. Probation for purposes of the PSR.[70] The PSR estimated the amount of crack cocaine for which defendant was responsible to be 56 grams, which was an

---

[67] R. Doc. No. 681, at 3 ("Under Alleyne we must decide whether the offense involved at least 50 grams of crack in which it did not.").

[68] Defendant also argues in connection with this ground that "[h]e was no more than a seller of the cocaine." R. Doc. No. 675, at 22. Defendant's argument that he was no more than a "buyer/seller" of narcotics is addressed above. *See* discussion *supra* Part II.

[69] R. Doc. No. 681, at 3.

[70] R. Doc. No. 610, at 5.

understatement due to a calculation error.[71] The Court noted that defendant "admitted that [co-defendant] Ramee called him to complain that, when he cooked the cocaine hydrocholoride, it came back to less cocaine base,"[72] and the factual basis reflects that over 300 grams of crack cocaine were discussed during that phone call alone.[73] As the Court stated, although the factual basis would support a quantity of over 300 grams of crack cocaine, the Court was not "going to now recalculate and hold that against [defendant]."[74] After a lengthy discussion on the record and an off-the-record discussion with counsel, defendant withdrew his objection.[75] Notwithstanding defendant's argument that he did not request that the cocaine be transformed into crack, the factual basis, admission made by defendant, and the record amply reject such contention.

For the above reasons and for the reasons stated at defendant's sentencing hearing, the Court finds that its finding that defendant was responsible for a quantity of at least 50 grams of crack cocaine was not erroneous and that such finding was amply supported by the factual basis. Neither defendant's trial counsel nor his appellate counsel were ineffective under *Strickland* for failing to raise these arguments. *See Kimler*, 167 F.3d at 893; *see also Medellin*, 371 F.3d at 279; *Smith v. Puckett*, 907 F.2d at 585 n.6.

### IV.    Wiretaps

Defendant asserts that his counsel was "ineffective for not [moving] for a suppression or [*Franks*] hearing based on the misrepresentations in the affidavit" that supported the order

---

[71] *See* R. Doc. No. 610, at 10.

[72] R. Doc. No. 610, at 10.

[73] R. Doc. No. 318, at 8 ("[A]fter having purchased the above cocaine hydrochloride, RAMEE called [defendant] to complain that when he cooked the cocaine hydrochloride, it came back to less cocaine base ('crack') (109 grams, 113 grams, and 112 grams) than was expected[.]").

[74] R. Doc. No. 610, at 11; *see* R. Doc. No. 610, at 9-10.

[75] *See* R. Doc. No. 610, at 5-12.

authorizing a wiretap in this case.[76] According to defendant, "[t]he affidavit stated that traditional investigative techniques had been included . . . when the record did not constitute such allegations."[77] Defendant contends that the judge who authorized the wiretaps was misled,[78] and he alleges that "[t]he necessity requirement was not met here."[79] Defendant states that he "request[ed] a suppression hearing and counsel failed to investigate the allegations of the false representations or [omissions],"[80] and that his appellate counsel was ineffective for not raising this issue on direct appeal.[81]

### A.    Necessity

Pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, §§ 801-04, 82 Stat. 211, 211-25, a court "may enter an ex parte order . . . authorizing or approving interception of wire, oral, or electronic communications . . . if the judge determines on the basis of the facts submitted by the applicant that" certain requirements are met. 18 U.S.C. § 2518(3). One of the requirements, known as the "necessity" requirement, mandates that before a Title III order may issue, the issuing judge must find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be

---

[76] R. Doc. No. 675, at 24; *see also* R. Doc. No. 681, at 4 (citing 18 U.S.C. § 2518(10), which provides that "[a]ny aggrieved person . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter").

[77] R. Doc. No. 675, at 24.

[78] R. Doc. No. 675, at 24.

[79] R. Doc. No. 681, at 4; *see also* 18 U.S.C. § 2518(1) ("Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication under this chapter shall be made in writing upon oath or affirmation . . . . Each application shall include the following information: . . . (c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed it tried or to be too dangerous . . . .").

[80] R. Doc. No. 675, at 25.

[81] R. Doc. No. 675, at 25.

too dangerous."[82] *Id.* § 2518(3)(c). The statutory necessity requirement "is intended to ensure that [f]ederal wiretap authorization procedures 'were not to be routinely employed as the initial step in criminal investigation.'" *United States v. Hyde*, 574 F.2d 856, 867 (5th Cir. 1978) (quoting *United States v. Giordano*, 416 U.S. 505, 515 (1974)).

"[T]he government need not prove exhaustion of every conceivable option before a wiretap order may issue." *United States v. Guerra-Marez*, 928 F.2d 665, 671 (5th Cir. 1991). The Fifth Circuit has noted that "courts are reluctant to impose their hindsight upon law enforcement agencies, and the proponent of the application need not establish that 'every other imaginable mode of investigation would be unsuccessful.'" *Id.* at 670 (quoting *United States v. Diadone*, 558 F.2d 775, 778 (5th Cir. 1977)). Instead, courts in this Circuit "take a 'common sense view' of the statement contained in the application to determine if the necessity requirement is satisfied." *Guerra-Marez*, 928 F.2d at 670; *see also United States v. Johnson*, No. 06-301, 2008 WL 1820104, at *6 (E.D. La. Apr. 21, 2008) (Duval, J.).

B.    *The Wiretap*

The wiretap at issue was signed by Chief U.S. District Judge Sarah Vance on February 2, 2010,[83] and it targeted three telephones that were believed to be used by defendant.[84] The affidavit accompanying the wiretap states that, "[s]ince March 2009, members of the [FBI New Orleans Gang Task Force ('NOGTF')] have been collecting intelligence on an organized group of individuals who are believed to be trafficking powder and crack cocaine in and around New

---

[82] Normal investigative procedures include, for example, standard visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants. *Hyde*, 574 F.2d at 867 (citation omitted).

[83] R. Doc. No. 685-1, at 8. During a telephone status conference on September 2, 2014, defendant confirmed that his claim relates only to this particular wiretap. *See* R. Doc. No. 682.

[84] R. Doc. No. 685-1, at 2-3.

Orleans, Louisiana. During the course of this investigation, it was determined that [Lance] **FOUCHA** and **MINGO** were an integral part of this group and that **MINGO** was believed to supply **FOUCHA** with cocaine."[85] The affidavit set forth an extensive description of information obtained from previously authorized wiretaps as well as pen data and toll records for the target cell phones.[86]

The affidavit states that "the interception of wire communications remains the only investigative technique having the reasonable likelihood of obtaining evidence necessary to prosecute violations alleged in . . . this affidavit."[87] The affidavit thoroughly explained the prior use of and/or the inability to use normal investigative procedures, such as confidential sources,[88] physical surveillance,[89] telephone toll records and pen registers,[90] search warrants,[91] a grand jury,[92] undercover officers,[93] interviews,[94] and other recordings.[95]

---

[85] R. Doc. No. 685, at 20.

[86] R. Doc. No. 685, at 17-30.

[87] R. Doc. No. 685, at 30.

[88] *E.g.*, R. Doc. No. 685, at 30-31 ("Affiant and members of the NOGTF made an unsuccessful attempt to introduce a confidential informant to **MINGO** in an attempt to purchase narcotics.").

[89] *E.g.*, R. Doc. No. 685, at 31-32 ("Based on the intercepted overhears, this organization is extremely surveillance conscious. . . . In separate attempts to conduct physical surveillance on **MINGO**, he has conducted what agents believe to be countersurveillance. . . . Additionally, physical surveillance alone can merely confirm meetings among individuals and do[es] not identify the purpose or nature of the meetings.").

[90] *E.g.*, R. Doc. No. 685, at 32 ("Pen register information has been used in this investigation, . . . as described above . . . but such records do not identify those individuals actually making and receiving the telephonic communications.").

[91] *E.g.*, R. Doc. No. 685, at 32 ("At this point, [a]ffiant has enough information to seek a search warrant . . . , but executing a search warrant at this time would jeopardize the opportunity to fully understand and exploit the scope of **MINGO**'s network and source of supply.").

[92] *See* R. Doc. No. 685, at 32-33.

[93] *E.g.*, R. Doc. No. 685, at 33 ("This organization is closely knit, primarily made up of life-long friends who grew up in and around New Orleans.").

[94] *See* R. Doc. No. 685, at 34.

[95] *See* R. Doc. No. 685, at 34-35.

The affidavit states that while "the investigation to date has been helpful in identifying participants . . . and determining a small portion of the organizational structure of this group . . . , only wire interception will permit investigators to determine the precise nature and scope of the illegal activity being committed and to gather critical evidence concerning the resources derived from and used to finance such activity."[96] The affidavit "concludes that the interception of wire communications is an essential investigative means in obtaining evidence of the offenses in which the interceptees are involved."[97]

Based on the foregoing sworn statements, Judge Vance found that there was probable cause for the wiretap and that "[n]ormal investigative procedures have been tried and failed, reasonably appear unlikely to succeed if continued, reasonably appear unlikely to succeed if tried, or are too dangerous."[98]

### C.    Direct Challenge to Necessity

To the extent that defendant directly challenges the wiretap applications for failure to meet the necessity requirement,[99] his argument is without merit. Despite defendant's assertion that this was "a purely conclusory affidavit [that] was unrelated to the instant case,"[100] a thorough review of the affidavit reveals that it was detailed and tailored to the investigation of defendant's conspiracy.[101] The Court also disagrees with defendant's contention that "[t]he affidavit contained insufficiencies about the physical surveillance."[102]

---

[96] R. Doc. No. 685, at 35.
[97] R. Doc. No. 685, at 35.
[98] R. Doc. No. 685-1, at 2.
[99] R. Doc. No. 681, at 4.
[100] R. Doc. No. 681, at 4.
[101] *See, e.g.*, *supra* notes 87-99.
[102] R. Doc. No. 681, at 4; *cf.* R. Doc. No. 685, at 31 ("Based on the intercepted overhears, this organization is extremely surveillance conscious. . . . In separate attempts to conduct physical surveillance on MINGO, he has conducted what agents believe to be countersurveillance. . . .

Defendant further objects that the factual basis contains nothing about "controlled buy" attempts.[103] However, defendant offers no authority requiring the factual basis to include every detail of an investigation, and the omission of details relative to controlled buy attempts from the factual basis does not undermine its sufficiency.

Defendant also objects that the affidavit misleadingly characterizes him as "a violent large scale drug supplier that used weapons to sell cocaine and crack across the state of [L]ouisiana" because such assertion "was not proven by the record."[104] Defendant fails to explain how this argument implicates the necessity requirement.

Lastly, the Court notes that "[a] defendant who pleads guilty waives all nonjurisdictional defects in the prior proceedings." *United States v. Walker*, No. 10-143, 2012 WL 4415357, at *2 (E.D. La. Sept. 24, 2012) (Engelhardt, J.) (citing *United States v. Daughenbaugh*, 549 F.3d 1010, 1012 (5th Cir. 2008)). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea," with the exception of "attack[ing] the voluntary and intelligent character of the guilty plea." *Daughenbaugh*, 549 F.3d at 1012 (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Because defendant does not assert in connection with this ground that his guilty plea was involuntary, he is precluded from directly challenging the affidavits underlying the

---

Additionally, physical surveillance alone can merely confirm meetings among individuals and do[es] not identify the purpose or nature of the meetings.").
[103] R. Doc. No. 681, at 4; *see also* R. Doc. No. 675, at 25 ("No drug buys had been attempted nor surveillance, nor had any cooperating witnesses c[o]me forth to state that they had purchased or sold cocaine to [defendant].").
[104] R. Doc. No. 681, at 3-4; *see also* R. Doc. No. 675, at 24 ("This misleading statement led the Judge to believe that defendant was a violent drug trafficker and signed for the wire tap.").

authorization to conduct a wiretap.[105] *See United States v. Salazar*, 323 F.3d 852, 855 (10th Cir. 2003) (applying the *Tollett* rule and finding that an "unconditional guilty plea effectively waived any challenge to the legality of the wiretaps").

Defendant would require that the government "prove exhaustion of every conceivable option before a wiretap order may issue." *Guerra-Marez*, 928 F.2d at 671. However, having reviewed the relevant portions of the wiretap application and affidavit and having considered defendant's arguments, the Court finds that the wiretap application fully complied with Congress's "inten[t] to ensure that [f]ederal wiretap authorization procedures were not to be routinely employed as the initial step in criminal investigation." *Hyde*, 574 F.2d at 867 (internal quotation marks omitted). To the extent that defendant directly challenges the necessity requirement of the wiretap application, defendant's arguments are without merit.

### D.  Failure To Move for Suppression

To the extent that defendant alleges that his counsel was ineffective for failing to file a motion to suppress the evidence obtained via the wiretap,[106] defendant's argument is meritless. As discussed above, the necessity requirement was clearly met with respect to the affidavit at issue. Because such argument is meritless, neither his trial counsel nor his appellate counsel were ineffective for failing to raise a challenge to the necessity requirement. *See Kimler*, 167 F.3d at 893; *see also Medellin*, 371 F.3d at 279; *Smith v. Puckett*, 907 F.2d at 585 n.6.

---

[105] *See* R. Doc. No. 675, at 25 ("[T]his cause should be remanded for a suppression hearing . . . .").

[106] The Court also notes defendant's contention that he "requested a suppression hearing." R. Doc. No. 675, at 25. Even if defendant did ask his counsel to file a motion to suppress, however, defendant's counsel was not ineffective for failing to urge a meritless motion. *See, e.g.*, *Martin v. McCotter*, 796 F.2d 813, 818 n.1 (5th Cir. 1986) ("We agree . . . that it was not deficient for counsel to forego a hearing and to decide against urging a frivolous motion to suppress . . . .").

D.    *Failure To Request a* Franks *Hearing*

Defendant asserts that his trial counsel should have moved for a *Franks* hearing "based on the misrepresentations in the affidavit."[107] The affidavit supporting a search warrant enjoys a presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). To defeat this presumption, defendant must show that "(1) allegations in a supporting affidavit were deliberate falsehoods or made with a reckless disregard for the truth, and (2) the remaining portion of the affidavit is not sufficient to support a finding of [necessity]."[108] *United States v. Mays*, 466 F.3d 335, 343 (5th Cir. 2006). As the U.S. Supreme Court stated in *Franks*:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.

*Franks*, 438 U.S. at 171.

The Court finds that defendant's attack is merely "conclusory" and that it is not "supported by more than a mere desire to cross-examine." *See id.* Defendant alleges deliberate misrepresentations, but those allegations are not "accompanied by an offer of proof." *See id.* To the extent that defendant does identify specific misleading statements or falsehoods, his

---

[107] R. Doc. No. 675, at 24.

[108] "[A]lthough *Franks* dealt specifically with probable cause, its reasoning applies in [the necessity requirement] context as well." *United States v. Ippolito*, 774 F.2d 1482, 1485 (9th Cir. 1985); *see also Guerra-Marez*, 928 F.2d at 670-71; *United States v. Heilman*, 377 F. App'x 157, 177 (3d Cir. 2010) ("Although we have not addressed the issue, most appellate courts have held that *Franks* hearings are also appropriate when a defendant is challenging whether there are false statements or omissions in an affidavit for a wiretap application that speak to the necessity requirement.").

accusations are not "accompanied by a statement of supporting reasons," and those challenges are disproven by the record, as discussed above. *See id.*

Defendant further asserts that trial counsel was ineffective for failing to "investigate the allegations of the false representations or [omissions] in the [wiretap]."[109] While defense counsel is "not required to pursue every path until it bears fruit or until all conceivable hope withers," *Lovett v. Florida*, 627 F.2d 706, 708 (5th Cir. 1980), an attorney's failure to investigate the case against the petitioner and to interview witnesses can support a finding of ineffective assistance, *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994). Under *Strickland*, a petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citations omitted); *see also United States v. Goodley*, 183 F. App'x 419, 422-23 (5th Cir.2006) (citing *Green*, 882 F.3d at 1003).

As discussed above, defendant has not offered anything other than conclusory allegations of misrepresentations, and he has not identified anything that his counsel should have investigated other than "allegations of the false representations or [omissions]."[110] Because defendant has offered nothing to suggest that his arguments have any merit or that a *Franks* hearing could have led to the exclusion of the wiretap evidence, defendant has not satisfied any prong of the *Strickland* test, and this ground for relief is without merit.

---

[109] R. Doc. No. 675, at 25.

[110] R. Doc. No. 675, at 25. Defendant further argues that "[t]he government's factual basis did not assert that there was not a misrepresentation in the affidavit." R. Doc. No. 681, at 4-5. This argument cannot satisfy *Franks*' requirement that defendant's allegations "must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171.

## V.        Failure To Present Mitigation Evidence

Defendant asserts that his trial counsel was ineffective "for failure to present mitigating evidence during the sentencing phase" regarding the shank that was found in his cell.[111] Defendant asserts that his trial counsel failed to properly investigate his claim that the shank was used to cut meat and that counsel should have conducted a cross-examination of the government's witness and called additional witnesses.[112] Specifically, defendant contends that "counsel failed to ask the correction officer the question of whether inmates use shanks to cut up meat" and "failed to present [inmates] and former inmates upon defendant's request" to ask them whether they use "shanks to cut up [meat], not for violent purposes."[113]

Defendant has not demonstrated how he was prejudiced by his counsel's alleged failures.[114] Although defendant is correct that his counsel did not ask Deur "whether inmates use shanks to cut up meat,"[115] defendant ignores the fact that the Court asked Deur a substantially

---

[111] R. Doc. No. 675, at 26.

[112] *See* R. Doc. No. 675, at 26. Defendant also reasserts his arguments from grounds one and two. *See* R. Doc. No. 675, at 26-28.

[113] R. Doc. No. 675, at 26; *see also* R. Doc. No. 610, at 31 ("THE COURT: . . . Is there any evidence that you wish to present? MR. JENKINS: No, sir.").

[114] Regarding *Strickland*'s first prong, defendant contends that failure to take these steps at the sentencing hearing should not be considered a "tactical decision." R. Doc. No. 675, at 28. The government asserts that "[w]hether to call witnesses and how to question them if called are strategic decisions that are not the basis of asserting a constitutional claim for ineffective assistance of counsel." R. Doc. No. 679, at 17. The cases cited by the government, however, do not establish such a blanket rule. *See* R. Doc. No. 679, at 17 (citing *United States v. Castro*, No. 02-40733, 2003 U.S. App. LEXIS 29653 (5th Cir. 2003); *Cisneros-Guitierrez v. United States*, No. 05-125, 2012 U.S. Dist. LEXIS 43135 (N.D. Tex. Mar. 5, 2012) (Stickney, M.J.)).

"'Given the almost infinite variety of possible trial techniques and tactics available to counsel, [the Fifth] Circuit is careful not to second guess legitimate strategic choices.'" *United States. v. McGrew*, 560 F. App'x 342, 347 (5th Cir. 2014) (quoting *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993)). Despite this ample deference, however, the Court need not examine whether counsel's performance was deficient because of its finding as to the second *Strickland* prong, as explained below.

[115] R. Doc. No. 675, at 26.

identical question.[116] Contrary to defendant's contention that "[t]he correctional officer with his experience and training would have admitted" that shanks were used for cutting meat,[117] Deur testified that he had *never* "seen an inmate need a knife to separate or cut up" the sausages at issue.[118] The Court further notes that defendant has not identified the names of any inmates who would have testified on his behalf with respect to these issues or supplied any affidavits confirming the same.[119]

---

[116] R. Doc. No. 610, at 18-19 ("THE COURT: Have you ever seen an inmate need a knife to separate or cut up these types of sausages? THE WITNESS: No, sir. They can just pull them apart if they wanted to.").

[117] R. Doc. No. 675, at 26.

[118] R. Doc. No. 610, at 18-19.

[119] *See* R. Doc. No. 675, at 44 ("I also had other inmates that wanted to testify and I cannot state their names as of right now because I cannot remember them.").

Even if defendant's counsel had presented current or former inmates as witnesses, the Court would not have imposed a different sentence. The Court extensively questioned defendant about the shank and other issues, and defendant testified at length regarding the shank, reiterating that he possessed the shank for the purpose of cutting meat. *See, e.g.*, R. Doc. No. 610, at 33-35. For example, the Court asked, "Did you ever complain to anybody that the sausage was too hard, you were having trouble and you needed a utensil to go ahead and cut the sausage?" R. Doc. No. 610, at 33-34. Defendant replied: "Don't be complaining about nothing. But I've been in the hole for that." R. Doc. No. 610, at 34. Following this questioning, the Court stated, "I don't believe for a second [that the shank] was to cut sausage." R. Doc. No. 610, at 47.

Moreover, defendant's reason for possessing the shank was not a conclusive factor regarding defendant's ultimate sentence. The Court explained the reasons why the shank was so concerning:

THE COURT: You knew it was wrong to have that shank, didn't you?

THE DEFENDANT: I had it for a shank. I ain't have no problem with no inmate.

THE COURT: Did you know that it was wrong for you to have that shank in your cell?

THE DEFENDANT: Yes, sir. I knew it was wrong. It was contraband.

THE COURT: You knew it was wrong, you hid it in the toilet paper.

THE DEFENDANT: I used the toilet paper to write. I had cooked tuna and [c]hicken. I was watching the NBA playoff game that night.

THE COURT: Don't need the shank for the tuna, I know that.

THE DEFENDANT: No. I mixed the tuna with the other meat, and you got to spread it down good.

But I ain't had it, no, no, to use it. Because I've been there for 18 months and I ain't never had no problem.

Finally, the Court notes that the shank was merely one of many factors that the Court considered when determining an appropriate sentence. In explaining its reasons for an upward variance, the Court discussed a long list of issues that were raised in the PSR,[120] and the Court "appropriately relied upon the § 3553(a) sentencing factors in determining that an above-guidelines sentence was warranted."[121]

The Court finds that the alleged failure to present mitigating evidence at sentencing did not amount to *Strickland* prejudice as there is not "a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Even if defendant's counsel had done everything defendant contends he should have done, the Court would not have imposed a lesser sentence. Accordingly, this ground is without merit.

## VI.     Alleged Promise by Counsel

Defendant "asserts that [an] actual promise was made when counsel brought the initial factual basis . . . but changed it at the change of plea hearing and advised defendant that the changes didn't matter when in fact defendant was sentenced to a statutory minimum sentence based on counsel's advice."[122] "Defendant asserts that he agreed to an open plea based on a factual basis that did not include the 924 (c) or the 50 grams of crack which raised a statutory

---

THE COURT: You knew it was wrong to have that shank. The shank presents a problem and a danger, not only to other inmates and yourself, but to the guards, end of story.
R. Doc. No. 610, at 34-35.
    As the Court explained, defendant's knowing possession of a dangerous object, which constituted an intentional violation of the rules and a severe hazard to everyone around him, was a significant concern to the Court regardless of defendant's stated reason for possessing it. *See* R. Doc. No. 610, at 47. A shank's deadly potential in a corrections environment is not diminished because its owner merely intends to use it solely to cut meat.
[120] *See* R. Doc. No. 610, at 40-48.
[121] R. Doc. No. 672, at 3; *Mingo*, 542 F. App'x at 433.
[122] R. Doc. No. 675, at 30-31.

enhancement and a consecutive mandate."[123] Succinctly stated, defendant's argument is that "he would not have pled guilty based on the different factual basis had he known that the 924 (c) and the 50 grams of crack would have not bee[n] invalidated from the indictment or that he would [be] subject to the consecutive mandate."[124]

"A defendant who seeks to prevail on a claim that his plea was involuntary due to counsel's representations concerning the sentence he would receive must show that his plea was motivated by an 'actual promise.'" *United States v. Fernandez*, 317 F. App'x 388, 390 (5th Cir. 2009) (quoting *Smith v. McCotter*, 786 F.2d 697, 701 (5th Cir. 1986)). "To prevail on the theory of an actual promise, the petitioner must prove: (1) the exact terms of the promise; (2) exactly when, where, and by whom the promise was made; and (3) 'the precise identity of an eyewitness to the promise.'" *Id.* (quoting *Smith*, 786 F.2d at 701). "Significantly, a guilty plea is not rendered involuntary simply because a defendant misunderstood his defense counsel's inaccurate prediction that a lesser sentence would be imposed[.]" *United States v. Lewis*, No. 07-428, 2012 WL 368712, at *5 (E.D. La. Feb. 3, 2012) (Feldman, J.). "[I]f the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor or defense counsel, the guilty plea stands." *Fernandez*, 317 F. App'x at 390 (quoting *Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002)).

---

[123] R. Doc. No. 675, at 29. Defendant refers to an attached factual basis, which was a previous version that was signed two days prior to the rearraignment. R. Doc. No. 675, at 36-43. This version of the factual basis did not contain the facts supporting the gun charges, but it was not relied on by the Court either at rearraignment or at sentencing.

[124] R. Doc. No. 675, at 30. Defendant also reasserts arguments that are made in connection with other grounds. *See, e.g.*, R. Doc. No. 675, at 31. The Court addresses such arguments elsewhere in this order and reasons.

Defendant asserts that the terms of the promise were that pleading guilty would not expose him to a statutory minimum or a mandatory consecutive term for count 26.[125] Defendant also adequately alleges "when, where, and by whom the promise was made."[126] *See id.* However, although defendant acknowledges that he must "identify any eyewitnesses to the guarantee" in order to prevail under an "actual promise" claim,[127] *see DeVille v. Whitley*, 21 F.3d 654, 658 (5th Cir. 1994) (cited by defendant), defendant has not alleged that there was any such eyewitness. For this reason, he cannot prevail on an "actual promise" theory. *See United States v. Castillo-Sanchez*, No. 94-20443, 1995 WL 103643, at *4 (5th Cir. Mar. 3, 1995) ("He alleges his counsel told him to expect to receive a sentence of about forty months, but has not shown that there was a witness to his counsel's alleged promise."); *see also United States v. Cruz*, No. 06-551, 2007 WL 1566645, at *5 (S.D. Tex. May 29, 2007) ("Cruz has not alleged any facts about the identity of any witnesses to any promise [by defense counsel], and has not provided any evidence showing the merit of any alleged promise.").

Furthermore, defendant's assertions contradict his statements at the rearraignment hearing. The Court explained the maximum possible sentences that defendant faced, and defendant confirmed his understanding throughout the proceeding.[128] The Court also specifically explained that counts 1 and 26 carried mandatory minimum sentences,[129] and the Court instructed defendant that the sentence with respect to count 26 would be "not less than five years imprisonment and not more than life imprisonment, to be served consecutively to any other term

---

[125] R. Doc. No. 675, at 30.
[126] *See* R. Doc. No. 675, at 30-31.
[127] R. Doc. No. 675, at 30.
[128] R. Doc. No. 609, at 19-28.
[129] R. Doc. No. 609, at 27 ("THE COURT: Do you fully understand that [c]ounts 1 and 26 carry mandatory minimum sentences? THE DEFENDANT: Yes, sir.").

of imprisonment."[130] The Court explained that it could impose the maximum possible sentence.[131]

Defendant indicated that "the sentencing guidelines and the mandatory minimum sentences" had been explained to him by his counsel.[132] Defendant stated that nobody had told him what sentence he might receive or made him any kind of promise,[133] and defendant's attorney stated that he had not told defendant what kind of sentence the Court might impose.[134] Although defendant contends that his counsel "did not allow [him] to go over the factual basis,"[135] the entire document was read to him,[136] and he indicated that he understood the factual basis and did not have any questions.[137]

---

[130] R. Doc. No. 609, at 26. Defendant indicated that he understood. R. Doc. No. 609, at 27.

[131] R. Doc. No. 609, at 27 ("THE COURT: . . . Now, do you fully understand that if I accept your guilty plea I can impose the maximum possible sentences I just related to you? THE DEFENDANT: Yes, sir.").

[132] R. Doc. No. 609, at 28.

[133] R. Doc. No. 609, at 30 ("THE COURT: Have you been influenced or persuaded to plead guilty because of any promise of leniency or other things made by anyone? THE DEFENDANT: No, sir. THE COURT: Have you been influenced or persuaded to plead guilty because of any threats made by anyone? THE DEFENDANT: No, sir. THE COURT: Has anyone, including your attorney, told you what sentence you might receive if I accept your guilty plea? THE DEFENDANT: No, sir.").

Defendant's statements at rearraignment directly contradict his affidavit, where he states that his counsel "allowed the D.A. and the DEA agents to intimidate [defendant] by telling him, they know that he did not [sell] crack, but his past crack conviction and co-defendants will hurt him if he goes to trial." R. Doc. No. 675, at 35. Defendant apparently refers to the prior version of the factual basis that he signed on March 15, 2011. However, as described in this order and reasons, defendant pled guilty with full knowledge of the consequences of his plea, notwithstanding his conflicting statements regarding the alleged intimidation.

[134] R. Doc. No. 609, at 33 ("THE COURT: Have you made any representations to your client as to the sentence I will impose? MR. JENKINS: No, I have not.").

[135] R. Doc. No. 675, at 35.

[136] R. Doc. No. 609, at 35-48.

[137] R. Doc. No. 609, at 48-49 ("THE COURT: . . . Mr. Mingo, do you wish to ask or have your attorney ask the U.S. Attorney any questions about the factual basis? THE DEFENDANT: No, sir. THE COURT: Have you heard the evidence and facts that detail the charges against you? THE DEFENDANT: Yes, sir. THE COURT: Do you understand the government's evidence? THE DEFENDANT: Yes, sir. THE COURT: Are the U.S. Attorney's statements correct? THE

The record indicates that defendant understood the sentences that he faced. Defendant stated that he desired to plead guilty based on the signed factual basis and subject to the penalties that were explained to him by the Court.[138] These declarations, made under oath and in open court, are not lightly brushed aside. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) ("'Solemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings.'") (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)); *see also United States v. Gonzalez-Archuleta*, 507 F. App'x 441, 442 (5th Cir. 2013) ("We bear in mind that 'solemn declarations in open court carry a strong presumption of verity,' and a defendant ordinarily may not refute testimony given under oath at a plea hearing.") (citations omitted) (quoting *United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009)).

"In cases where a petitioner claims that he or she was denied the effective assistance of counsel at the pleading stage, these allegations must be corroborated 'by the affidavit of a reliable third person.'" *United States v. Gonzalez*, No. 97-10111, 1998 WL 127868, at *2 (5th Cir. 1998) (quoting *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985)). Defendant has not provided any affidavit by a third party, and "[h]is own affidavit, containing self-serving conclusional allegations, is insufficient." *United States v. Merrill*, 340 F. App'x 976, 978 (5th Cir. 2009) As such, defendant's assertions are uncorroborated and defendant's "showing is inconsistent with the bulk of [his] conduct [and] otherwise fails to meet [his] burden of proof in the light of other evidence in the record." *Cervantes*, 132 F.3d at 1110.

---

DEFENDANT: Yes, sir. THE COURT: Do you agree that is what you did? THE DEFENDANT: Yes, sir.").

[138] R. Doc. No. 609, at 49-50 ("THE COURT: Although you've indicated throughout these proceedings a desire to plead guilty, do you understand you still have the right to continue in your not guilty plea? THE DEFENDANT: Yes, sir. THE COURT: Ask you one last time, how do you wish to plead? THE DEFENDANT: Guilty.").

To the extent that defendant asserts a *Strickland* ineffective assistance of counsel claim in connection with this ground, as described above, defendant has not made a sufficient showing with respect to either *Strickland* prong.[139]

### VII. Consecutive Revocation Sentence

"Defendant asserts that the District Court committed plain error . . . by failing to treat the guidelines as advisory where the District Court had the discretion to run his revocation time concurrent and did not sentence him to a reasonable term of imprisonment considering his revocation time . . . ."[140] Defendant also asserts that his trial counsel was ineffective for failing to object when the Court ordered his sentence to run consecutive to the sentence imposed for the supervised release violation.[141]

The reasonableness of defendant's sentence was affirmed by the Fifth Circuit on direct appeal.[142] "It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986); *see also United States v. Goudeau*, 512 F. App'x 390, 393 (5th Cir. 2013) ("[W]e may not consider an issue disposed of in [a] previous appeal at the § 2255 stage."). Accordingly, the Court need not address any argument directed at the reasonableness of defendant's sentence.[143] Similarly, to the extent that defendant's challenge is

---

[139] The Court also notes that defendant contends that his counsel told him "not to ask questions at his arraignment, because the judge will get upset fast." R. Doc. No. 675, at 34. The arraignment proceedings are irrelevant to defendant's motion, and the Court notes that defendant did ask a question at his rearraignment t. *See* R. Doc. No. 609, at 34. Moreover, the Court gave defendant numerous opportunities to ask questions throughout the course of the rearraignment proceeding.

[140] R. Doc. No. 675, at 31-32.

[141] R. Doc. No. 675, at 32.

[142] R. Doc. No. 672, at 4; *Mingo*, 542 F. App'x at 434.

[143] The Court notes that defendant did not raise on appeal the issue of his sentence running consecutively to his revocation sentence. *See* Brief for Appellant at 9-14, *Mingo*, 542 F. App'x 432. Defendant's seventh ground does not refer to his appellate counsel, defendant does not

---

based on the U.S. Sentencing Guidelines,[144] the Court need not address any such argument because "[m]isapplications of the Sentencing Guidelines . . . are not cognizable in § 2255 motions." *Williamson*, 183 F.3d at 462.

The government does not address defendant's ineffective assistance of counsel argument—that his counsel should have objected at the time of sentencing to the consecutive nature of the sentence. Defendant asserts that he "is entitled to relief because had counsel objected, the court[] could have taken into [account] defendant's supervised release when rationalizing the sentence."[145]

Even if such failure to object constituted deficient performance—a finding which this Court does not make—defendant has not shown that he was prejudiced under *Strickland*. Defendant asserts that "had counsel objected, the court[] *could* have" run the sentences concurrently.[146] As defendant recognizes, "the District Court had the *discretion* to run his revocation time concurrent,"[147] but the Court is not bound to do so. Moreover, the Court was not unaware of its discretion regarding this issue, as defendant suggests,[148] and any objection by defendant's counsel at the sentencing hearing would have been fruitless. For the "extensive"[149]

---

mention the word "appeal," and defendant's arguments focus solely on the failure to "object." *See* R. Doc. No. 675, at 31-32. Accordingly, the Court interprets defendant's seventh ground as applying only to his trial counsel and, therefore, the Court need not conduct a *Strickland* analysis regarding the failure by defendant's appellate counsel to raise this issue on direct appeal. Even if the Court did conduct such analysis, however, the result would be the same. *See, e.g.*, *Green*, 160 F.3d at 1043 ("On appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available.").

[144] R. Doc. No. 675, at 31.

[145] R. Doc. No. 675, at 32.

[146] R. Doc. No. 675, at 32; *see also* R. Doc. No. 681, at 5.

[147] R. Doc. No. 675, at 32 (emphasis added).

[148] R. Doc. No. 681, at 5 ("Defendant asserts that had counsel instructed the court that his revocation could run concurrent th[e]n the judge could have considered it instead of treating the guidelines as mandatory under 5g1.3.").

[149] R. Doc. No. 672, at 4; *Mingo*, 542 F. App'x at 433.

reasons stated on the record, the Court specifically intended to impose this sentence consecutively to defendant's revocation sentence, and any objection would have been overruled. Accordingly, defendant's *Strickland* claim is meritless.

## CONCLUSION

An evidentiary hearing is required on defendant's motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). For the foregoing reasons, the motion, files, and record of the case conclusively show that defendant is not entitled to relief. *See Bartholomew*, 974 F.2d at 41. Accordingly,

**IT IS ORDERED** that the motion is **DENIED** and defendant's post-conviction application is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, September 8, 2014.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**